STATE OF MISSOURI, TO THE USE OF J. A. WHERRY, Respondent, v. JOHN F. DARBY ET AL., Appellants.

March 7, 1882.

The statutory remedy, against a principal debtor, for money paid by a surety, does not embrace sureties upon a guardian's bond or the bond of a trustee under a will.

APPEAL from the St. Louis Circuit Court, ADAMS, J. *Reversed and dismissed.*
MARTIN & LACKLAND, for the appellants.
KLEIN & FISSE, for the respondent.

THOMPSON, J., delivered the opinion of the court upon a rehearing.

We granted a rehearing in this case because of the novelty and difficulty of the questions involved, and because it was not argued at the bar, owing to accidental circumstances, when it was first submitted. We have now had the advantage of a very clear and able argument, on both sides, of all the questions raised by this record; and we have come to the conclusion, very reluctantly, that we were wrong in the interpretation which, in our original opinion, we placed upon the statute under which this motion is filed. After considering the arguments to which we listened at the bar, and again examining the statute in question (Rev. Stats., sect. 3904), we find ourselves unable to escape the conclusion, that the remedy by motion given by the statute does not extend to sureties in bonds which are given to secure the performance of private official trusts.

The language of the statute itself would seem to indicate this; for, by its terms, it extends the remedy to cases of judgments, " upon any bond, bill, or note for the payment of money or delivery of property." It is to be observed in the first place, that the statute places bonds in the same category with bills and notes. If we were to resort to the principle *noscitur a sociis* to ascertain the meaning of the word " bond," we should conclude that by the bond here referred to is meant an obligation similar in its general character and purposes to a bill or a note. This conclusion is greatly strengthened when we consider the natural import of the qualifying words, " for the payment of money or delivery of property," which immediately follow. Now, as all notes or bills of which we have any knowledge are given either for the payment of money or the delivery of property, these qualifying words would seem to have been intended to limit the meaning of the word " bond," and it would follow that the legislature must have had in mind the

fact that some bonds are given to secure the payment of money or the delivery of property, while other bonds are given to secure the doing of some other act. It is true that a bond given for the performance of a trust is, in a secondary sense, a bond for the payment of money; but so is every bond of which we have knowledge. This being so, if the legislature had meant to extend the remedy to sureties in bonds given for the performance of trusts, the use of these qualifying words was entirely unnecessary. But it is a rule of statutory interpretation that a statute must be so read and understood as to give meaning and effect to all the terms employed in it, where this is possible.

This view of the meaning of the terms employed in this statute is, perhaps, further strengthened by a consideration of the next clause, "against the principal *debtor* and any surety therein." The term "debtor" is an apt word to define the principal obligor in a bill of exchange, in a promissory note, or in a bond given merely to secure the payment of so much money. But it is not so aptly applied to the principal in a bond given to secure the performance of a continuing trust. We do not, however, lay much stress upon the use of this word; for it is not an apt word when used to designate the principal in a bond given to secure the delivery of property. Besides, when a judgment is rendered on a bond, all the parties thereto against whom it has been rendered, may be aptly designated as debtors, and the principal in the bond as a principal debtor.

An examination of other sections of the statute tends to confirm this view of the meaning of the section in question. If the legislature had intended to extend the remedy given by this section to sureties in all kinds of bonds, and if they had supposed that they had expressed their meaning clearly to this end, it would not have been thought necessary in another section of the same statute, to extend the remedy given by the section, to a particular class of bonds. But we find that the legislature has done

this. In a subsequent section (Rev. Stats., sect. 3914), it provided that "any person bound as surety in any bond given by any officer to secure the faithful performance of his duties, who shall pay any money which he shall have been liable to pay by reason of such bond, shall have the same right and remedy against his principal and co-sureties as are provided in this chapter against principals and co-sureties in bonds, bills, and notes for the payment of money or delivery of property." If this last section had been adopted by a legislature subsequent to that by which the former section was passed, we might conjecture that it had been passed to quiet views which may have arisen as to whether the former section extended to official bonds. But we find, on tracing the history of this statute, that our entire statute, consisting of twenty-five sections embraced in Chapter LXVI. of the Revised Statutes of 1879, entitled, "Of sureties and their Discharge," was first enacted by the legislature on March 16, 1835, and that it has been handed down to us from the revision of 1835, through the various revisions of our statutes, to the present time, without change.

Referring to other sections of this chapter we find the distinction between bonds, bills, and notes for the payment of money or the delivery of property, and bonds given to secure the performance of continuing trusts of a public or private nature carefully preserved. Thus, in the first section (Rev. Stats., sect. 3896), it is provided that "any person bound as surety for another in any bond, bill, or note, for the payment of money or delivery of property, may at any time after an action has accrued thereon, require in writing the person having such right of action forthwith to commence suit against the principal debtor and other parties liable." And in the second section (Rev. Stats., sect. 3897), it is provided that "if such suit is not commenced within thirty days after the service of such notice, and proceeded in with due diligence, in the ordinary course of law, to judgment and execution, such surety shall be exonerated from

liability to the person so notified." And then it is provided in the fourth section, that "the first two sections shall not extend to the bond of any administrator, executor, guardian, curator, officer, or other person, given to secure the performance of the duties of his office, trust, place, or business, nor to any bond with collateral condition, except bonds with conditions exclusively for the payment of money or delivery of property, or for the performance of any covenant or agreement for the payment of money or delivery of property."

It is thus seen that in these sections the legislature has thrown into one class all obligations which have for their purpose merely to secure the payment of money or the delivery of property, and into another distinct and separate class, all bonds given to secure the performance of the duties of an office, trust, place, or business. The former class would obviously embrace bills of exchange, promissory notes, bills single with sureties (which last, in former times when this statute was first enacted, were much more in use than at present), forthcoming bonds in attachment cases, and other like bonds given to secure the delivery of property taken under writs of *fieri facias*, replevin, or in proceedings for the enforcement of liens upon chattels. Whereas the latter class of obligations would embrace, in addition to those specifically named in section 3809, bonds given by cashiers and tellers of banks, collecting agents, and the like.

The suggestion that the bond in question, which was that of a guardian, is embraced in the terms of the nineteenth section of the statute relating to sureties (Rev. Stats., sect. 3914), cannot, we think, be entertained. That section extends the remedy given by section 2904, to "any bond given by any officer to secure the faithful performance of his duties." We think the word "officer," as here used, must be interpreted according to its ordinary import, which would make it mean public officer.

We cannot see any good reason why the legislature should have extended the remedy given by this section to certain classes of sureties, and denied it to a'nother class; but the conclusion seems unavoidable that they have done so, and that sureties on all bonds given to secure the performance of private trusts or offices, are not embraced in its provisions. It was suggested on the argument that, as this statute creates a summary remedy in derogation of the common law, it ought to be construed strictly. It may be doubted whether this rule of statutory construction, which once obtained, has not in modern times become substantially obsolete. All statutes ought to be construed so as to reach, if possible, the intention of the legislature; but where there is substantial doubt as to whether a particular case is embraced within the terms of a statute, if the statute is in derogation of some right existing at common law, — such, for instance, as the right of a husband to his wife's personalty, — it will be so construed as not to embrace the particular case. But where the statute does not repeal or impinge upon a right existing at common law, but merely creates a new, or extends an old, remedy, for the benefit of a meritorious class of suitors who, like sureties, are favored by the common law, the particular case will be held to be embraced within its terms. We are, therefore, of the opinion expressed in our former opinion in this case, that it should be the policy of the courts to enlarge rather than contract the remedies given by the legislature to meritorious suitors, and that the statute here in question ought hence to be construed remedially. Feeling in this way, we are frank to say that if we could see any reasonable ground on which we could bring the case of a surety in a guardian's bond within its terms, — if, after the argument we have heard and the more mature consideration which we have given to the subject, we could bring ourselves to feel that the legislature so intended, — we should gladly so decide. We have the satisfaction of knowing that if, after

having given our best efforts to the discovery of the meaning of this statute, we have erred, the amount in controversy is sufficient to enable the plaintiff to take the case to a higher tribunal, where our error may be corrected. We also have the satisfaction of knowing that our judgment goes no further than to deny to the plaintiff a special and summary remedy; the ordinary remedies given by the law to one who has been compelled to pay money as surety for another remain open to him.

The judgment of the circuit court will be reversed and the motion dismissed. Judge BAKEWELL concurs; Judge LEWIS was not present at the argument, but, as he took part in our former decision of the case, we have thought it right to consult with him, and he authorizes us to say that, upon further reflection, he concurs in our present view as to the meaning of the statute.